IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERT ASHFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-04236-CV-C-NKL |
| ) | |
| CITY OF LAKE OZARK, MISSOURI, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER

Pending before the Court is Defendants' Partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), or in the Alternative, for Partial Summary Judgment [Doc. # 12]. For the reasons set forth below, the Motion will be granted in part and denied in part.

I. **Factual Background**

This civil rights action arises out of the alleged religious harassment of Plaintiff Robert Ashford ("Ashford"). As it must when considering a Motion to Dismiss, the Court will assume as fact the following allegations in Ashford's Complaint. During the period at issue in this lawsuit, Defendants Michael Luby ("Luby"), Elbert Sutton ("Sutton"), Jim Elkin ("Elkin"), Steve Dalton ("Dalton"), Jill Wade ("Wade"), and Paul Garrison ("Garrison") served on the City of Lake Ozark's ("the City") Board of Aldermen, with Defendant Gary Weber ("Weber") serving as the City's Mayor. During

1

that period, Ashford, who is a member of the Church of Jesus Christ of Latter Day Saints, was employed by the City as a building inspector.

In the fall or winter of 2003, Luby petitioned Ashford for a building permit for construction on his own property. Ashford visited the construction site to ensure compliance with City code and noted several violations which he communicated to Luby's general contractor. Following these citations, Luby began harassing Ashford for his religious affiliation in front of other City employees, as well as making derogatory statements about other Mormons employed by the City and about the Mormon faith in general. On June 23, 2004, Luby confronted Ashford at City Hall and in the presence of other city employees, threatened to hit Ashford in the face, referred to him as a "fucking Mormon," denigrated the Mormon faith, and questioned Ashford's professional competence.

The confrontation was not the first time Luby had created trouble for City employees. In December 2002, the Mayor, Board of Alderman, and City Attorney received a memo complaining of other inappropriate conduct by Luby against other City employees. Shortly thereafter, a combination lock was placed on the City employees' work area to prevent unauthorized access, and Luby was told by the Board to avoid City Hall except on official business. Thereafter, Luby continued to harass the City's Mormon employees, threatening to fire the Planning and Zoning Supervisor Kenter and his own general contractor, Steven Hackler, both Mormons. He suggested publicly that Mormons couldn't perform their official duties because they all lie and "stick together."

Following the June 2004 confrontation between Luby and Ashford at City Hall, the Board initiated impeachment proceedings against Luby and banned him from City Hall pending an investigation. Garrison and Weber voted against hiring an independent counsel to conduct the investigation. During the investigation, some of the City's employees were intimidated and coerced into giving false accounts of Luby's behavior for fear of termination. At least one employee was repeatedly told by Luby that the employee did not hear him call Ashford a "fucking Mormon." It appears that the Board did not vote to impeach Luby.

Ashford also contends that, even before Luby's unsuccessful impeachment proceeding, the Board engaged in a pattern and practice of protecting themselves and each other from censure and discipline.

## II.     Motion to Dismiss

Ashford's Complaint raises eight[1] claims under 42 U.S.C. § 1983, the Missouri Human Rights Act, Title VII, and various state law torts against the City and its Board of Alderman and Mayor in both their individual and official capacities. The Defendants move the Court to dismiss all of these claims. A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to accept all the above factual allegations from the Complaint as true. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957)). A complaint should not be dismissed

---

[1] The Court has recently granted Plaintiff's request to file an Amended Complaint adding a ninth Count for retaliatory discharge under the FMLA on the condition that Counts I-VIII would remain unchanged. The pending Partial Motion to Dismiss will be treated as addressing the eight claims raised in the Amended Complaint that were also raised in the original Complaint.

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Thus, dismissal under Rule 12(b)(6) is appropriate only when a plaintiff's allegations show on the face of the complaint that there is some insuperable bar to relief. *Krentz v. Robertson,* 228 F.3d 897, 905 (8th Cir. 2000).

### A. Title VII

Ashford brings two claims under Title VII. Count III is for creating a hostile work environment and Count IV is for constructive or retaliatory discharge. The Defendants argue they cannot be sued in their individual capacities under Title VII because Ashford was not an employee of the individual Defendants. Because Title VII only applies to employers, mere employees cannot be sued in their individual capacities. *See Lenhardt v. Basic Inst. of Technology, Inc.*, 55 F.3d 377, 381 (8th Cir. 1995) ("[S]upervisors and other employees cannot be held liable under Title VII in their individual capacities."). Ashford concedes the holding of *Lenhardt* that employees may not generally be sued in their individual capacities under Title VII. However, citing *Jackson v. City of St. Louis*, 220 F.3d 894, 897 (8th Cir. 2000), he suggests that the Eighth Circuit has allowed joint § 1983 and Title VII employment discrimination cases to proceed without differentiating between § 1983 liability, which does permit individual liability, and Title VII liability, which does not permit individual liability. He also cites *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998), for the proposition that a supervisor may be joined in his capacity as the employer's agent in a Title VII case.

4

Neither case supports his position. In *Jackson*, the Eighth Circuit noted only that "[t]here is virtually no case law addressing . . . whether to apportion damages between a public employer liable to the plaintiff under Title VII and an individual employee liable under § 1983." 220 F.3d at 898. It is clear from that court's language that the individual defendant was liable only under § 1983 and not Title VII. *Bales* is equally unhelpful to Ashford's position as that court unequivocally held that "supervisors may not be held individually liable under Title VII. Thus the District Court properly decided that [the supervisor] could be liable only in his capacity as an employee of Wal-Mart and that the damages assessed against Vallejo were properly imposed upon the common employer of Bales and Vallejo." 143 F.3d at 1111 (quotations and citations omitted). *Lenhardt* remains the law of the Eighth Circuit with regard to Title VII.

Ashford's Title VII claims for creating a hostile work environment and for constructive or retaliatory discharge in Counts III and IV will therefore be dismissed as to all individual Defendants in their individual capacities.

### B. The Missouri Human Rights Act

Counts III and IV also raise claims under the MHRA. Count III is for creating a hostile work environment and Count IV is for constructive or retaliatory discharge. As with the Title VII claims, the individual Defendants argue that employees cannot be held liable in their individual capacities under the MHRA. *See Lenhardt, infra*, 55 F.3d at 381 (8th Cir. 1995) ("[W]e believe the Missouri Supreme Court would hold that the definition of the term employer in the MHRA does not subject employees, including supervisors or

5

managers, to individual liability."). As Defendants concede, however, *Lenhardt*'s prediction vis-à-vis the MHRA has been seriously questioned in subsequent opinions by several U.S. District Courts. *See Wesley v. Oce Bus. Servs.*, 2005 U.S. Dist. LEXIS 33564, at *7 (W.D. Mo. 2005) (there is "a reasonable basis . . . for predicting that the Missouri Supreme Court might impose liability on an individual under the MHRA."); *Garrett v. Ball Metal Beverage Container Corp.*, 2005 U.S. Dist. LEXIS 2936, No. 05-0068-CV-W-ODS (W.D. Mo. Feb. 24, 2005); *Hill v. Ford Motor Co.*, 324 F. Supp. 2d 1028 (E.D. Mo. 2004).

The District Courts rejecting *Lenhardt* have observed that *Lenhardt*'s prediction contradicts the plain language of the MHRA, which defines "employer" to include "the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state, and any person directly acting in the interest of an employer . . . ." Mo. Rev. Stat. § 213.010. The phrase "and any person acting in the interests of an employer" clearly contemplates the liability of individual persons. *Wesley*, 2005 U.S. Dist. LEXIS 33564, at *5. These Courts have also noted that in *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002), the Eighth Circuit held that "[i]f an individual meets the definition of employer as defined by the [Family and Medical Leave Act], then that person should be subject to liability in his individual capacity." The FMLA defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Thus, the Courts rejecting *Lenhardt* have noted that "because the definition of 'employer'

6

Case 2:05-cv-04236-NKL   Document 25   Filed 01/25/06   Page 6 of 15

in the FMLA is closer to the definition of 'employer' in the MHRA than the definition of 'employer' under Title VII, the *Darby* decision casts doubt on the Eighth Circuit's prediction in *Lenhardt*." *Wesley,* 2005 U.S. Dist. LEXIS 33564, at *6. This Court has previously agreed with its sister Courts in predicting that the Missouri Supreme Court would allow individual capacity suits under the MHRA. *See Wagner v. Cookbook Publishers, Inc.*, No. 05-4261-CV-C-NKL (W.D. Mo. Nov. 21, 2005). The Court sees no reason in this case to deviate from its previous ruling.

Even if a supervisor can be held individually liable under the language of the MHRA, Defendants argue (1) that any language reaching individual private employers distinguishes them from state employers, and (2) even if state employers are covered, none of the named Defendants was Luby's employer since they had no power to fire him. The Court rejects both arguments. With regard to the first, the MHRA uses the phrase "and any person directly acting in the interests of the employer" after defining "any political or civil subdivision" of the state as an employer. Thus, Defendants' argument that the statute does not include government employers is untenable under the plain language of the statute.[2]

Defendants' second argument, that the Mayor and other Alderman were not Luby's employers since they had no authority to fire or discipline him, is irrelevant to

---

[2]The Eighth Circuit has found no distinction between public and private employers under the FMLA. *See Darby*, 287 F.3d at 681 ("We see no reason to distinguish employers in the public sector from those in the private sector."). Given the similar definitions of "employer" between the FMLA and the MHRA that informed this Court's holding on individual liability under the MHRA, it follows from *Darby* that the MHRA likewise makes no distinction between public and private employers.

7

their present Motion.  First, Defendants' contention that they could not fire or otherwise discipline Luby is belied by the fact that the Board twice initiated impeachment proceedings against him and banned him from City Hall.  Second, irrespective of whether they could fire him, it is not their employment of Luby that gives rise to the MHRA claim; rather it is the City's employment of Ashford that subjects those individuals acting in the City's interest to potential liability for violating the MHRA.  Ashford alleges that the Mayor and the Board created a hostile work environment and either constructively discharged him or discharged him in retaliation for the protected activity.

It may be, of course, that Ashford will not be able to prove his claim.  But the sufficiency of Ashford's evidence is not the issue presently before the Court.  Dispositive motions are not due for more than seven months.  At the present stage of this litigation, the Court is unable to dismiss Ashford's MHRA claims under Counts III and IV.

### C. Intentional and Negligent Infliction of Emotional Distress

In Counts VI and VII, Ashford charges Defendants with intentionally or negligently inflicting emotional distress.  All Defendants claim sovereign immunity in there official capacities, and all individual Defendants claim official immunity in their individual capacities.

#### 1. Sovereign Immunity

The City, as well as the individual Defendants in their official capacity, claim that Ashford's state tort law claims are barred by Missouri's sovereign immunity.  Further, they argue that their sovereign immunity has not been waived through the City's purchase

of liability insurance because the policy covers only automobile accidents and premises liability. Because this part of Defendants' Motion requires that the Court look beyond the pleadings themselves to the insurance documents attached to the Defendants' Suggestions in Support, the Court will treat this portion of the Motion as one for partial summary judgment rather than a motion to dismiss. Thus, for the Court to grant summary judgment on sovereign immunity, there must be no genuine disputes of material fact and the defendants must be entitled to judgment as a matter of law. *Baucom v. Holiday Companies,* 428 F.3d 764, 766 (8th Cir. 2005). Moreover, Summary Judgment should only be entered after sufficient time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Ashford argues that Defendants waived their sovereign immunity under Mo. Rev. Stat. § 537.610 when they secured an insurance policy through the Missouri Public Entity Risk Management Fund ("MOPERM"). He challenges Defendants' contention that their policy is limited to automobile and premises liability on three grounds. First, the attached policy is not supported by any authenticating affidavit stating that it is the full extent of the City's coverage. Secondly, Ashford notes that the policy coverage runs from January 1, 2004, to January 1, 2005, while the conduct alleged in his Complaint began in 2003. Finally, he notes that the policy covers "Employment Practice Liability" but the documents attached to Defendants' Suggestions do not explain what that coverage includes. In short, Ashford challenges the policy's authenticity, its coverage period, and

9

its scope. The Court finds the second of these objections sufficient reason to deny partial summary judgment at this time.

Assuming the policy documents submitted by Defendants are authentic, Section VI.F "Multiple Coverage Periods" provides that: "An occurrence with a duration of more that one coverage period shall be treated as a single occurrence arising during the coverage period when the occurrence begins." Since the conduct alleged in Ashford's Complaint began in 2003, the policy provided by Defendants is inapplicable by its own terms.

Defendants' failure to produce the relevant policy documents cannot shield them at this juncture from Ashford's allegation that they are in fact insured against his Complaint. At the very least, the scope of Defendants' insurance coverage is a disputed issue of fact material to their sovereign immunity defense. The Court finds that further discovery is required before it can decide whether Ashford's state law claims are barred by sovereign immunity. The Motion for Partial Summary Judgment by the City and its Mayor and Aldermen in their official capacities is therefore denied.

### 2. Official Immunity

The individual Defendants also move to dismiss Counts VI and VII against them in their individual capacities under the doctrine of official immunity. Under Missouri law, "[t]he official immunity doctrine provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (quoting *DaVee*

*v. Mathis*, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991). Discretionary acts require "the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Warren v. State*, 939 S.W.2d 950, 953 (Mo. Ct. App. 1997) (quoting *Rustici v. Wiedemeyer*, 673 S.W.2d 762, 769 (Mo. 1984) (en banc)). It is generally held that official immunity "applies to all discretionary acts except those done in bad faith . . . ." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986) (en banc).

Defendants characterize Counts VI and VII as arising from the Mayor's and the Board of Aldermen's failure to impeach Luby. Since impeachment of a fellow Aldermen under Mo. Rev. Stat. § 79.240 is by its own terms[3] a discretionary act, the individual Defendants argue that they are officially immune from suit for failure to impeach. Defendants mischaracterize the nature of Ashford's Complaint, however, which includes allegations that the Board and Mayor "directed, encouraged, ratified and/or personally cooperated in the acts of Luby directed against Ashford." Compl. ¶¶ 106, 110. Ashford further alleges that the Board and Mayor "conspired together and amongst themselves . . . to undertake a course of conduct to protect each other from the consequences of their wrongful acts," Compl. ¶¶ 57, 103, 110, including the coercion and intimidation of

---

[3]"The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office, for cause shown, any elective officer of the city, such officer being first given opportunity, together with his witnesses, to be heard before the board of aldermen sitting as a board of impeachment. Any elective officer, including the mayor, may in like manner, for cause shown, be removed from office by a two-thirds vote of all members elected to the board of aldermen, independently of the mayor's approval or recommendation." Mo. Rev. Stat. § 79.240 (2006).

11

witnesses. Compl. ¶ 31. These allegations go beyond mere failure to impeach and, taken as true for the purposes of a Motion to Dismiss, suggest that the Board and Mayor were corrupt and acted in bad faith. *See Hawkins v. Holloway,* 316 F.3d 777, 788-89 (8th Cir. 2003). Thus, the individual Defendants are not entitled to official immunity with regard to Counts VI and VII against them in their individual capacities, based on the current record.

### 3. Outrageous Conduct

Regarding Count VI, Defendants also contend that, with the possible exception of Luby, none of them is alleged to have engaged in conduct of the caliber necessary to state a cause of action for intentional infliction of emotional distress under Missouri law. To state such a claim in Missouri, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (quoting *Warren v. Parrish*, 436 S.W.2d 670, 673 (Mo. 1999). In *Gibson*, the Missouri Supreme Court upheld a trial court's dismissal of an intentional infliction of emotional distress claim against the Kansas City Diocese even though the complaint alleged that the Diocese had covered up child abuse by its priests. That court found that the complaint did not support an inference that the Diocese had acted with the primary purpose of causing emotional distress to the plaintiff. *Id.* In the present case, none of Ashford's allegations against anyone except Luby is egregious enough to state a cause of action for intentional infliction of emotional distress under

12

Missouri law. Given the personal nature of Luby's alleged conduct against Ashford, however, the Court cannot say that Ashford will be unable to prove the claim against him. Count VI will, therefore, be dismissed against all Defendants except Luby.

**D. Assault**

In Count VIII of his Complaint, Ashford sues Luby for assault for threatening to hit him in City Hall in June of 2004. Luby moves the Court to dismiss the claim on the grounds that Missouri requires more than mere words to state a cause of action for assault. He cites MAI 23.01, the first element of which is "defendant (*here describe act such as 'pointed a gun at plaintiff'*) with the intent to cause plaintiff" apprehension of offensive contact. He further cites the MAI Committee Comment which notes that "[c]ases of assault not accompanied with a battery are quite rare in Missouri" and directs attorneys to the Restatement (Second) of Torts §§ 21-34, which provide that "words alone do not constitute an assault." Luby maintains that ¶ 17 of Ashford's Complaint alleges only that "Luby threatened to hit Ashford in the face" and does not allege any other act which would put Ashford in apprehension of offensive contact. However, that paragraph also alleges that Luby initiated a confrontation, which at least suggests more than passing words. Paragraph 20 alleges that "Luby's threatening behavior was witnessed by several city employees." Accepting all of Ashford's allegations as true for the purposes of a Motion to Dismiss, and given the relatively minimal requirements of notice pleading under the Federal Rules of Civil Procedure, the Court cannot say that Ashford will not be

13

able to prove that Luby intentionally caused him to apprehend imminent offensive contact. Count VIII against Luby will not be dismissed.

E. Section 1983 Claims

In Counts I, II, and V, Ashford alleges that Defendants created a hostile work environment for Mormon employees, conspired to violate his civil rights, and violated his substantive due process rights. The individual Defendants (other than Luby himself) move the Court to dismiss all three counts against them in their individual capacities because they lacked any supervisory authority over Luby. Once again, however, Defendants mischaracterize the nature of Ashford's Complaint. In addition to their failure to remove Luby through impeachment[4] under Mo. Rev. Stat. § 79.240, Ashford alleges that Defendants themselves created a hostile work environment and conspired to deprive the City's employees of their civil rights by, among other things, covering up complaints against Board members, coercing witnesses and altering their statements during official investigations, and retaliating against anyone who complained about members of the Board. Thus, Counts I, II, and V allege more than mere supervisor liability. Assuming, as it must in this posture, that the allegations of the Complaint are true, the Court cannot say as a matter of law that Ashford will be unable to prove any set of facts which would impose § 1983 liability on the individual Defendants. As noted

---

[4]The Court does not at this juncture offer any opinion as to whether the Mayor and the Board of Aldermen may in fact be held liable as Luby's supervisors under section 1983. That issue need not be reached in rejecting Defendants' Motion to Dismiss, however, as there are other bases for the Board and Mayor's liability alleged in the Complaint beyond their failure to remove Luby from office.

14

Case 2:05-cv-04236-NKL   Document 25   Filed 01/25/06   Page 14 of 15

earlier, dispositive motions are not due for more than seven months. It may turn out after discovery that Ashford will not be able to prove the other Aldermen created a hostile work environment beyond failing to remove Luby from office. Likewise, he may not be able to prove any conspiracy to deprive him of his civil rights or any practice of coercing witnesses or altering their statements. But the sufficiency of Ashford's evidence is an issue better raised in a Motion for Summary Judgment after discovery is complete. Dismissing the § 1983 claims against the Defendants in their individual capacities at this point in the litigation would be premature.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Defendants' Partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), or in the Alternative, for Partial Summary Judgment [Doc. # 12] is GRANTED in part and DENIED in part. The Title VII claims in Counts III and IV are DISMISSED as to Sutton, Elkin, Dalton, Wade, Garrison and Weber in their individual capacities. The intentional infliction of emotional distress claim in Count VI is DISMISSED as to all Defendants except Luby  As to all other Counts and claims, the Motion is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 25, 2006
Jefferson City, Missouri